IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. <br> LARRY GEORGE EDWARDS, JR., <br><br> Plaintiff/Relator, <br><br> vs. <br><br> HOMESTAR NORTH AMERICA, LLC, <br><br> Defendant. | : <br> : **FILED UNDER SEAL** <br> : **PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br> : <br> : <br> : Civil Action No. _____ <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

1.  Plaintiff Larry George Edwards, Jr. ("Edwards" or "Plaintiff"), acting as a relator pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, brings this action on behalf of the United States to recover damages and civil penalties, and to obtain injunctive relief, against defendant Homestar North America, LLC ("Homestar NA").

## SUMMARY

2.  This *qui tam* case is brought to disclose, and to remedy, a scheme to defraud the United States out of customs duties owed in connection with importation of furniture products made in China. Those products were, and continue to be, subject to so-called "Section 301" tariffs that were put into place starting in September of 2018, and continuing through the present. The defendant, Homestar NA, is the importer of those products, and is the U.S.-based affiliate of a Chinese company, Homestar Corporation, that is one of the world's largest manufacturers of ready-to-assemble furniture. Homestar NA supplies furniture to many major retail outlets in the United States, including Walmart, Home Depot, Overstock, and Wayfair.

3. The fraud engaged in by Homestar NA is simple: for each shipment from China to the United States, Homestar has two invoices, a fake one that it provides to U.S. Customs and Border Protection ("CBP") to establish the value of the products for purposes of calculating duties owed, and a true one that has the actual (and much higher) price actually paid by Homestar NA back to the China-based manufacturer.

4. Knowing underpayment of customs duties is actionable under the "reverse false claims" provision of the False Claims Act. 31 U.S.C. § 3729(a)(1)(G).

5. Accordingly, Homestar NA has violated the False Claims Act. Under the False Claims Act, the damages incurred by the United States are trebled. In addition, the False Claims Act provides for statutory penalties, which should be imposed in addition to the trebled damages.

6. Although the dual-invoicing scheme alleged in this case is simple, it would be essentially impossible for CBP to detect on its own. The system that the United States uses to collect customs duties relies heavily upon truthful self-reporting reporting by importers. While certain types of customs fraud (for example, lying about the *type* of product being imported) might be detected by CBP if it conducted an inspection of an incoming shipping container, the type of fraud at issue here (lying about the *value* of the products) would not be evident to a CBP inspector.

7. Accordingly, *qui tam* cases such as this one—brought by a whistleblower with inside information about unlawful conduct that otherwise would remain invisible to the Government—are crucial to enforcement of tariff regimes, including the Section 301 tariffs at issue here.

## PARTIES

8. Plaintiff is a resident of the State of Texas.

9. Defendant is a limited liability company formed under the laws of the State of Delaware, with its headquarters and primary place of business in the State of Texas.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.11. § 1331 and 31 U.S.C. §§ 3730(b), 3732.

11. This Court has general and specific personal jurisdiction over Defendant because Defendant resides and regularly transacts business in Texas, and this action arises, at least in part, out of business transacted in Texas.

12. Venue is proper in this district pursuant to 28 U.S.C § 1391 and 31 U.S.C § 3732 because Defendant is located within this District, regularly does business within this District, and certain of the false and fraudulent acts complained of herein took place in this District.

## FACTS

13. Paragraphs 1 through 12 are incorporated herein by reference.

14. Plaintiff Edwards has worked in logistics and warehouse management for more than 16 years. His first position was with United Parcel Service, where his title was Customs Broker Representative. There, Plaintiff learned about the importation process, and was responsible for completing paperwork necessary for entry of shipments into the United States. Plaintiff subsequently worked a series of jobs with various companies in which he was responsible for managing large warehouse operations.

15. In September of 2020, Plaintiff took such a job, with the title Distribution Center Manager, with a company going by the name "Legacy Home Furnishing and Décor," which he learned was a d/b/a for Homestar NA. Plaintiff worked in that position for only a short time; on November 18, 2020, he was laid off from that position; the only explanation he was given was "manpower issues."

16. Defendant Homestar North America NA is one of group of related companies owned and controlled by Steve Lu, a Chinese citizen. Mr. Lu lives and works in China, where he is

the owner of a company called Homestar Corporation, which primarily manufactures ready-to-assemble ("RTA") home furniture and electric fireplaces. Homestar began operations in China in 2001.

17. In 2013, Mr. Lu formed Homestar NA and used that entity to purchase the operations of a company called Talon Systems, based in Statesville, North Carolina. From 2013 until late 2019, Homestar ran its U.S. operations out of that facility, which included manufacturing, warehousing and offices, and was located at 607 Meacham Road, Statesville, NC 28677. In late-2019, Homestar sold that facility to a major international furniture company, Ashley Furniture, and Homestar moved its own U.S. operations to a warehouse and office facility at 23 Prestige Cir, Allen, TX 75002. In late-2020, during the time that Mr. Edwards worked there, Homestar transitioned those operations to a facility at 2701 E. State Hwy. 121, Lewisville, TX 75056.

18. Pursuant to Title III of the Trade Act of 1974 (Sections 301 through 310, 19 U.S.C. §§2411-2420), titled "Relief from Unfair Trade Practices," and often collectively referred to as "Section 301," the United States has imposed tariffs on certain products manufactured in China. Of particular relevance here, as of September 24, 2018, an additional 10% tariff was imposed on products classified under the Harmonized Tariff Schedule of the United States ("HTSUS") with codes starting with 9403.20, 9403.30, 9403.40, 9403.50 and 9403.60. Those additional Section 301 tariffs increased to 25% as of May 10, 2019, with that additional 25% tariff owned with respect to products entered into the United States after June 15, 2019.

19. The vast majority of the furniture products that Homestar manufactures in China and that Homestar NA then imports into the United States fall within the above-mentioned HTSUS codes, and therefore were, and continue to be, subject to those Section 301 tariffs.

20. Importers are required to declare the customs value of all imported goods. Under U.S. law, the customs value is presumptively the "transaction value" of the imported goods.

Transaction value is defined as the "price actually paid or payable by the buyer to the seller, directly or indirectly, for the imported goods for export to the United States." 19 U.S. C. § 1401a(b)(4)(A); 19 C.F.R. § 152.103. The record or document that presumptively indicates the transaction value is the commercial invoice issued by the seller to the buyer for the particular shipment being imported into the United States.

21. As the Distribution Center Manager at Homestar NA's Texas facility, Plaintiff was responsible for managing the warehouse, and overseeing shipping and receiving.

22. Plaintiff first learned of Defendant's attempts to evade customs duties on or about October 12, 2020, in a conversation that he had with Ryan Reed, the Financial Controller of Homestar NA. Mr. Reed was aware that Plaintiff had prior experience with import documentation. Mr. Reed was troubled by something he was seeing in Homestar's records, and asked Plaintiff for his opinion. He called Plaintiff over to a computer screen, and showed Plaintiff two different invoices related to the same shipment from Homestar in China to Homestar NA in Texas.

23. One of the invoices was the one that had been provided to CBP in connection with CBP Form 7501, the so-called "entry summary." Importers provide such invoices to CBP, as attachments to the Form 7501, as documentation of the value of the imported goods.

24. The second invoice was one that had been sent by email from Homestar in China to Homestar NA, indicating the amount that Homestar NA was to pay to Homestar in China for those same goods.

25. The two invoices were in different amounts, with the invoice attached to the Form 7501 showing a lower price than the second invoice that had been emailed from Homestar in China to Homestar NA.

26. Upon seeing these two invoices with the two different prices, Plaintiff told Mr. Reed that this was not legal.

27. After that initial conversation that occurred on or about October 12, 2020, Mr. Reed raised the same issue with Plaintiff on several subsequent occasions, and showed Plaintiff additional examples of the same pattern: dual invoices for the same products, with the one going to CBP showing a lower price than the one actually being paid by Homestar NA to Homestar in China.

28. Accordingly, Homestar NA has been engaged in a pattern and practice of defrauding CBP via this dual-invoicing scheme, and accompanying false statements on Form 7501s.

29. Since September 24, 2018, when the Section 301 tariffs at issue went into effect, at least 144 separate entries, totaling at least 2,750 tons, were made into the United States of products shipped by Homestar in China that were within the scope of the Section 301 tariffs. Of those entries, at least 69 entries, totaling at least 1,362 tons, were shipped by Homestar in China directly to Homestar NA as consignee. In connection with each of those entries, Homestar NA was responsible for filing with CBP a Form 7501 and supporting invoices.

30. By way of example only:

   a. On or about October 12, 2020, a shipment of furniture classified under HTSUS code 9403.60 entered the United States at the Commerce/Los Angeles port with a reported weight of 11,118 kg (approximately 12.26 tons). For this shipment, Homestar Corporation in China was the shipper, and Homestar NA was the consignee.

   b. On or about November 10, three shipments of furniture classified under HTSUS code 9403.30 entered the United States at the Commerce/Los Angeles port with a combined reported weight of 46,960 kg (approximately 51.76 tons). For these shipments, Homestar Corporation in China was the shipper, and Homestar NA was the consignee.

   c. On or about December 23, 2020, a shipment of furniture classified under

HTSUS code 9403.30 entered the United States at the Commerce/Los Angeles port with a reported weight of 16,952 kg (approximately 18.69 tons).  For this shipment, Homestar Corporation in China was the shipper, and Homestar NA was the consignee.

31. The failure to declare the true and correct customs value of imported goods on the accompanying Form 7501 is a material omission.  While the tariff classification of imported goods determines the rate of customs duty to be applied to imported goods, the customs value of the imported goods determines the amount of customs duties and other import related charges and fees that must be paid.

32. Defendant acted with "knowledge," as that term is defined in the False Claims Act.  The False Claims Act explicitly states that the terms "knowing" and "knowingly," as used in the Act, "require no proof of specific intent to defraud."  31 U.S.C. § 3729(b)(1)(B).  Instead, those terms "mean that a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

33. Defendant had "actual knowledge" that it was undervaluing the imported dry batteries and failing to pay required customs duties.  This is amply demonstrated by the existence of dual invoices, one with a true price and another with a false price.  The only explanation for the existence of such dual invoices is that Defendant intended to provide false value information to CBD as part of a scheme to evade payment of customs duties.

34. In the alternative, even if Defendant did not have "actual knowledge" as that phrase is used in the False Claims Act, it clearly acted with "deliberate ignorance" and/or "reckless disregard" of the truth or falsity of its submissions to CBP, and of its obligation to pay the correct amount of customs duties to the United States.  As a sophisticated business entity engaged in the

repeated import of goods into the United States, Defendant was required to know about, and comply with, regulations governing customs duties, including the regulations relating to valuation of imported goods.

## COUNT ONE

35. Paragraphs 1 through 34 are incorporated herein.

36. A company violates the False Claims Act when it "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). This is the so-called "reverse false claims" provision of the Act. A knowing failure to pay customs duties violates this provision. *See*, *e.g.,* United *States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 252-56 (3d Cir. 2016).

37. Defendant knowingly made, used, or caused to be made or used, false records or statements, namely the Form 7501s and accompanying invoices, that contained false valuations of the goods imported from China.

38. The false Form 7501s and accompanying invoices were material to Defendant's obligation to pay or transmit customs duties to the Government.

39. By failing to pay the amount of customs duties that it was legally required to pay, Defendant also knowingly and improperly avoided or decreased its obligation to pay or transmit money to the Government.

40. As a result of these actions and omission, Defendant caused damages to the United States equal to the amount of customs duties that Defendant failed to pay, in an exact amount to be determined at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief:

1. An injunction requiring Defendant to cease and desist from further violations of the False Claims Act;

2. A judgment for damages against Defendant in an amount to be determined at trial equal to three times the amount of damages suffered by the United States as a result of Defendant's violations of the False Claims Act;

3. Civil monetary penalties for each false record or statement made, used, or caused to be made or used by Defendant that was material to any obligation to pay or transmit money or property to the United States Government and/or for each instance of Defendant knowingly concealing or knowingly and improperly avoiding or decreasing any obligation to pay or transmit money or property to the United States Government;

4. An award to Plaintiff pursuant to 31 U.S.C. § 3730(d);

5. An award to Plaintiff of reasonable attorneys' fees, costs and expenses;

6. Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

*/s/Richard L. Arnold*
Richard L. Arnold
State Bar No. 01345450

        Richard Arnold Law
        100 Crescent Court, 7th Floor
        Dallas, TX. 75201
        Tel:    214-459-2845
        Fax:    214-459-3101
        richard@richardarnoldlaw.com

        Jonathan K. Tycko
        Tycko & Zavareei LLP
        1828 L Street, NW, Suite 1000
        Washington, D.C. 20036
        Tel:    202-973-0900
        Fax:    202-973-0950
        jtycko@tzlegal.com